UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN VEHICULAR
SCIENCES LLC,

Plaintiff,

v.

AUTOLIV, INC., *et al.*,

Defendants

                             /

Case No. 5:16-cv-11530
District Judge Judith E. Levy
Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO DENY DEFENDANTS' MOTION FOR FEES AND COSTS (DE 39)

I.     **RECOMMENDATION**: The Court should deny Defendants Autoliv, Inc.

and Autoliv ASP, Inc.'s (collectively "Autoliv Defendants") motion for fees and

costs.  (DE 39.)[1]

II.    **REPORT**

    A.     **Procedural Background**

---

[1] This motion was filed in each of  four related cases, bearing case nos. 16-11529, 16-11530, 16-11531 and 16-11532.  For convenience, from this point forward, when this Report and Recommendation refers to a pleading, exhibit or any other filings, reference will be made to the filings in Case No. 5:16-cv-11529, unless otherwise specified.

In this patent infringement suit, Plaintiff American Vehicular Sciences, LLC ("AVS") alleges that Defendants infringed its patent, U.S. Patent No. 9,043,093 (the "'093 patent").  (DE 1.)

### 1.    The '093 patent

The '093 patent, titled "Single Side Curtain Airbag for Vehicles," was filed on October 31, 2007 and finally issued on May 26, 2015.  (DE 43-4, ¶ 2.)  "The '093 patent claims priority, via a chain of continuation-in-art and divisional applications" to an application filed on December 12, 1995 ("the '247 application"), and "relates to an airbag system for a vehicle, in which 'the airbag for the front and rear seats are combined, i.e., the airbag deploys along substantially the entire side of the vehicle alongside both the front seat and the rear seat.'"  (See DE 40-7 at 4.)  The prosecution of the '093 patent included nine substantive office actions from the Patent and Trademark Office ("PTO"), interviews with the examiners, and an appeal to the Patent Trial and Appeal Board ("PTAB").  (DE 43-4, ¶ 2.)

### 2.    AVS's September 2015 complaint alleging infringement of '093 patent

Plaintiff AVS sued 21 Defendant entities in September 2015, in four different actions in the Central District of California, alleging infringement of the '093 patent.  In each case, AVS named as defendants a vehicle manufacturer and the various entities that supply that vehicle manufacturer with the accused airbag

2

assemblies. The cases were transferred and are now pending in this Court as of April 2016, as Case Nos. 5:16-cv-11529, -11530, -11531, and -11532.

### 3. Unified Patent's December 2015 IPR petition, which the PTAB instituted in June 2016

On December 17, 2015, three months after this lawsuit was filed, Unified Patents Inc. ("Unified Patents") filed an *inter partes* review ("IPR") petition with the PTAB, challenging 10 of the 44 claims of the '093 patent (claims 1, 8, 10, 12, 17-19, 26, 27, and 36) as obvious over various combinations of prior art. (DE 40-5 at 3.) AVS filed its preliminary response on March 31, 2016 (DE 43-14), and the PTAB instituted the IPR on June 27, 2016 on 10 of the 44 claims in the '093 patent. (DE 40-5.) The Unified Patent IPR presented two obviousness grounds: the combinations of (1) Leising and Lau, and (2) Karlow and Lau. (*Id.*) The PTAB instituted on both grounds, finding that Unified Patent "has shown a reasonable likelihood of success on both asserted grounds," but also stated in the institution decision that "[a]t this preliminary stage in the proceeding, we have not made a final determination with respect to the patentability of any challenged claim or the construction of any claim term." (*Id.* at 35.)

### 4. These cases are stayed in August 2016

On August 15, 2016, Defendants filed a motion to stay litigation pending resolution of the instituted Unified Patent IPR, and "pending the outcome of any additional IPRs that may be instituted." (DEs 19, 20.) Defendants argued that it is

3

likely that some, if not all, of the claims of the '093 patent will be invalidated in a final written decision of the PTAB, but did not otherwise contend that AVS's complaint was frivolous or that this is an "exceptional" case under 35 U.S.C. § 285. (*Id.*) On August 26, 2016, the Court granted the unopposed motion and stayed this case pending the outcome of the PTAB review of the Unified Patent IPR. (DE 24.)

### 5. Defendants file 2 IPRs in September 2016, which were instituted in March 2017

On September 15, 2016, Defendants filed two separate petitions that challenged the validity of all claims of the '093 patent: (1) IPR2016-1790 ("the 1790 IPR"), and (2) IPR2016-1794 ("the 1794 IPR").[2] The 1790 IPR challenged all 44 claims of the '093 patent as invalidated by prior art, principally over two combinations substantially similar to those included in the Unified Patent IPR petition: (1) Leising and Lau, and (2) Karlow and Lau. (See DE 40-6.) The 1794 IPR also challenged all 44 claims of the '093 patent, but under an alternative theory: that the proper priority date for the claims was October 27, 2004 ("the '919 application"), not the December 12, 1995 application date as claimed by AVS.

---

[2] Key Safety Systems also filed a separate IPR petition on the '093 patent on September 21, 2016, but this IPR was denied by the PTAB on April 4, 2017. (DEs 43-25, 43-26.)

(DE 40-7.)[3]  Defendants contend that the claims of the '093 patent all require a limitation whereby a single curtain airbag has a plurality of compartments in "flow communication" with each other, and that the December 12, 1995 application AVS relies on did not include a written description with support for an airbag with compartments in flow communication.  (*Id.* at 11.)  Rather, Defendants contended, the principle of "flow communication" was not disclosed until October 27, 2004 (in the '919 application).  (*Id.*)

On March 28, 2017, the PTAB instituted on all grounds of the 1790 IPR. (DEs 40-6.)  On March 23, 2017, the PTAB instituted on all grounds of the 1794 IPR, finding that the December 12, 1995 application "does not provide sufficient written description support for at least the limitation 'wherein the plurality of compartments are in flow communication with each other.'"  (DE 40-7.)  In both decisions, the PTAB stated "[a]t this preliminary stage in the proceeding, we have not made a final determination with respect to the patentability of any challenged claim or the construction of any claim term."  (DE 40-6 at 52; DE 40-7 at 46.)

### 6.    The May 2017 Unified Patent IPR Final Written Decision and July 2017 appeal to the Federal Circuit

---

[3] During the hearing, counsel for AVS repeatedly referred to a 1994 priority date for the '093 patent.  (*See, e.g.,* 8/22/19 Hearing Transcript (hereinafter "Tr.") at 44.)  However, this appears to have been a simple misstatement, as the filings in the PTO proceedings and in this Court only refer to the claimed December 12, 1995 priority date.  (*See, e.g.,* DEs 40 at 19-20; 40-7 at 4; 40-10 at 6-7; 43 at 13-14.)

On May 19, 2017, while the 1790 and 1794 IPRs were pending, the PTAB issued its Final Written Decision on the Unified Patent IPR and invalidated the 10 challenged claims in that IPR as obvious in view of the Leising and Lau combination.  (DE 40-8 at 36.)   However, the PTAB concluded that eight of the claims had not been demonstrated to be invalid over the combination of Karlow and Lau.  (*Id.*)

AVS appealed this Final Decision to the Court of Appeals for the Federal Circuit in July 2017.  (DE 40-11.)

### 7. The March 2018 PTAB Final Written Decisions on the 1790 and 1794 IPRs

In March 2018, the PTAB issued its Final Written Decisions on the 1790 and 1794 IPRs, invalidating all claims of the '093 patent.  (DEs 40-9, 40-10.)  In its decision regarding the 1790 IPR, the PTAB found that the combinations of the prior art references rendered all asserted claims invalid as obvious.  (DE 40-9 at 69-70.)  With respect to the 1794 IPR, the PTAB confirmed that AVS was not entitled to claim priority to the December 12, 1995 filing date of the '247 application, and that all claims were invalid as obvious under the 13 grounds presented by Defendants in the 1794 IPR.  (*Id.* at 55-56.)  AVS appealed these decisions to the Federal Circuit.

### 8. The June 2018 Federal Circuit's affirmance of the PTAB's Unified Patent Final Written Decision and the denial of rehearing *en banc* in August 2018

6

The Federal Circuit summarily affirmed the PTAB's Final Written Decision regarding the Unified Patent IPR on June 19, 2018, and subsequently denied rehearing *en banc* on August 20, 2018.  (DEs 40-12, 40-13.)

### 9.    The October 2018 dismissal of the cases

In October 2018, following receipt of the Federal Circuit's final decision on the Unified Patent IPR, AVS notified the Defendants that it intended to dismiss these four cases, with each party to bear its own costs. (DEs 40-14, 43-27.) Defendants indicated that they did not oppose dismissal with prejudice, but did oppose any statement that the parties would bear their own fees and costs.  (DE 40-15.)  Further, Defendant Autoliv specifically notified AVS at that time of its intention to seek its fees incurred in defending this action.  (DE 40-16.)[4]

AVS filed it motion to dismiss and duly indicated that Defendants opposed the request that each party bear its own fees or costs.  (DE 27 at 4.)  AVS also submitted a proposed order that included AVS's proposed language regarding fees (stating that each party would bear its own costs), which the Court entered on October 29, 2018.  (DE 28.)  After Defendants notified the Court regarding their objection to such language, the Court issued an order requesting the Defendants to

---

[4] Separately, IPR counsel for AVS and Defendants dismissed the Federal Circuit appeals of the 1790 and 1794 IPRs, with each party bearing their own costs in that action.  (DE 46-5 at 2.)

"explain their position on the allocation of the fees and costs associated with this litigation."  (DE 32.)

### B.   The Instant Motion

#### 1.   Defendants' motion for fees and costs

On November 21, 2018, three "groups" of Defendants: (1) Autoliv, Inc. and Autoliv ASP, Inc. (the "Autoliv Defendants"); (2) Takata Corporation and TK Holdings, Inc. (the "Takata Defendants"); and, (3) Hyundai Mobis Co., Ltd., Mobis Alabama LLC and Mobis Parts America, LLC (the "Mobis Defendants"), filed the instant Motion for Fees and Costs in each of the four cases pursuant to 35 U.S.C. § 285, which authorizes a court to award "reasonable attorney fees to the prevailing party" in certain "exceptional cases."  (DE 40.)  Only the Autoliv Defendants remain.  (*See, e.g.,* Case No. 16-11530 (DE 57 (dismissing the Takata Defendants)), and Tr. at 25 (counsel for the Mobis Defendants stating that they are withdrawing their motion for fees).)

Defendants argue that they are the prevailing parties in this case because the Court dismissed these cases with prejudice, but that they did not consent to bear their own costs and fees.  They further argue that attorney fees are not limited to fees incurred in district court actions, but also include fees incurred in the IPR proceedings.  Defendants posit that these cases are "exceptional" and justify an award of fees because AVS presented "untenable, legally incorrect, and baseless

8

theories in an attempt to avoid invalidity" in the IPR proceedings and failed to

"continually assess the weakness of its case" regarding invalidity of the '093

patent.  Defendants claim that AVS was aware as early as June 2016 of the

"reasonable likelihood" that certain claims of the '093 patent were invalid when

the PTAB instituted the Unified Patent IPR, and as early as September 2016 that it

did not have a credible basis to claim priority to its earliest priority date of

December 12, 1995 and that all claims were invalid under the correct priority date

of October 27, 2004, based on Defendant's filing of the 1790 ad 1794 IPRs.  In

addition, Defendants contend that the award of attorneys' fees in another case,

*Automotive Technologies International, Inc. v. Siemens VDO Automotive Corp.*,

744 F.Supp.2d 646 (E.D. Mich. 2010), supports an award of fees here because the

cases are "strikingly similar."  (DE 40.)  Defendants explain that ATI was founded

in 1988 by David Breed, "the named inventor of the '093 Patent."  (*Id.* at 15, fn.1,

citing DE 40-17 at 12-13.)  Defendants contend that "Mr. Breed and ATI partnered

with AVS, a subsidiary of Acacia Research Corporation, with the goal of asserting

and monetizing ATI's patent portfolio, which included the '093 Patent."  (*Id.*)

Finally, Defendants assert that their request for fees is reasonable.  (DE 40)

### 2.    AVS's response

AVS opposes Defendants' motions for fees and costs.  AVS contends that it

is aware of no court awarding § 285 attorneys' fees based solely on conduct during

an IPR proceeding.  AVS argues that, "to the extent Defendants wanted to pursue sanctions for their IPR-related allegations and fees, they should have done so before the PTAB," referring to 37 C.F.R. §§ 11.18(b)(2), 42.11(c), (d)(2) & (3), 42.12.  AVS asserts that the PTAB is in the best position to determine whether the conduct in one IPR stands out or is uncommon or rare as compared to conduct in other IPRs.  AVS further argues that the IPR proceedings were not exceptional, as each claim of an issued patent is presumed to be valid under 35 U.S.C. § 282. AVS further contends that Leising and Lau and other references relied upon in the Unified Patent IPR and the 1790 IPR were considered during the prosecution of the '093 patent, with the PTO siding with AVS and "concluding it was ***not*** obvious to take the side airbag of Curtis/Leising covering only a seat in a first row and extend across two rows."  Similarly, AVS contends, with respect to the 1794 IPR, that "[w]hile the PTAB found in 2018 that priority to the December 1995 application was not proper, the PTO determined in 2015 that such priority was proper."  (DE 43 at 31.)  AVS further argues that the *ATI* case is irrelevant and exceptionally different from the instant case in that it did not involve the '093 patent and found that *ATI* engaged in litigation misconduct wholly absent from the present case. Finally, AVS contends that Defendants' costs are not recoverable and their attorneys' fees are unreasonable.  (DE 43.)

### 3.    Defendants' reply

10

In reply, Defendants contend that the attorney fee award in the *ATI* case is highly relevant because AVS represented to the PTAB that, "[s]tarting in 2011, Dr. Breed partnered with AVS to continue developing his patent portfolio and assist in licensing of his patents," and that "[t]he '093 patent is one of the patents arising from that relationship."  (DE 47 at 5, citing DE 43-17 at 11.)  Defendants further argue that IPR fee awards are within the Court's discretion, that AVS has not cited a single case that bars district courts from awarding fees associated with improper conduct during IPR proceedings, and that the case law supports awarding fees for work that "related to the suit" and "essentially substituted for work that would otherwise have been done before the court."  (DE 47 at 8.)  Finally, Defendants contend that AVS was not entitled to "blindly rely" on the PTO's issuance of a patent, but rather was required to continually assess the weakness of its patent in view of the relevant prior art and the correct priority date when presented with the IPRs, but failed to do so.  (*Id.*; *see also* Tr. at 10.)

## C.    Legal Standard

Section 285 of the Patent Act invests the Court with discretion to award reasonable attorney fees in patent infringement actions to the prevailing party "in exceptional cases." 35 U.S.C. § 285.  Construing the term "exceptional" in accordance with its ordinary meaning of "uncommon," "rare," or "not ordinary," the Supreme Court in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572

11

U.S. 545 (2014) rejected the former "rigid and mechanical formulation" for

awarding attorney fees in patent cases and set forth the following standard for

determining whether a case is "exceptional" under § 285:

> ... an 'exceptional' case is simply one that stands out from others with
> respect to the substantive strength of a party's litigating position
> (considering both the governing law and the facts of the case) or the
> unreasonable manner in which the case was litigated.

*Octane Fitness*, 572 U.S. at 554.  In *Octane Fitness*, despite articulating a less rigid

standard than that previously in place, the Supreme Court emphasized that a fee

award under § 285 should still be the exception, not the rule.  *Id.* at 555.  "District

Courts may determine whether a case is 'exceptional' in the case-by-case exercise

of their discretion, considering the totality of the circumstances."  *Id.* at 554.

Factors to be considered in determining whether a case is "exceptional" include,

but are not limited to, "frivolousness, motivation, objective unreasonableness (both

in the factual and legal components of the case) and the need in particular

circumstances to advance considerations of compensation and deterrence."  *Id.* at

554, n. 6 (internal quotations omitted).  The movant need only establish

"exceptional circumstances" under § 285 by a preponderance of the evidence.  *Id.*

at 557-58.

Further, "it is the 'substantive strength of the party's litigating position' that

is relevant to an exceptional case determination, not the correctness or eventual

success of that position.  A party's position on issues of law ultimately need not be

correct for them to not 'stand[] out,' or be found reasonable." *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015) (citing *Octane Fitness*, 572 U.S. at 554)); *see also Hockeyline, Inc. v. STATS LLC*, 13-cv-1446, 2017 WL 1743022, at *3 (S.D.N.Y. Apr. 27, 2017) ("The fact that a patent holder loses a case does not make it 'exceptional.' A case is not automatically exceptional because a patent was stricken for obviousness; after all, an obvious patent was originally allowed by a patent examiner.").

Finally, even if the Court were to determine that this case is exceptional, Defendants would not be automatically entitled to an award of attorney's fees. *See Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, 576 F. App'x 1002, 1005 (Fed. Cir. 2014) ("The Supreme Court's decision in *Octane* did not, however, revoke the discretion of a district court to deny fee awards even in exceptional cases."). A determination as to the propriety of a fee award is a separate discretionary inquiry. *See* 35 U.S.C. § 285 ("The court in exceptional cases *may* award reasonable attorney fees to the prevailing party.") (emphasis added); *Net Talk.com, Inc. v. Magic Jack Vocaltec Ltd.*, No. 12-CV-81022, 2015 WL 10015379, at *3 (S.D. Fla. Nov. 20, 2015) (collecting cases stating that the determination as to the propriety of a fee award is a separate discretionary inquiry), *report and recommendation adopted by* 2016 WL 498437 (S.D. Fla. Feb. 9, 2016), *aff'd*, 682 F. App'x 941 (Fed. Cir. 2017). "In determining whether to award attorney's fees, courts

13

consider the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser." *H-W Technology, Inc. v. Overstock.com Inc.*, No. 3:12-CV-0636-G (BH), 2014 WL 4378750, at *7 (N.D. Tex. Sept. 3, 2014).

### D.    Analysis

Defendants assert that they are the prevailing parties in this case and that they are entitled to an award of reasonable attorney's fees pursuant to 35 U.S.C. § 285 because this is an "exceptional case[]."  Defendants argue that AVS pursued baseless claims of infringement and damages and litigated the case in an unreasonable manner.  AVS responds that its actions in the IPR were reasonable and not exceptional.

### 1.    Defendants are prevailing parties

A defendant is a prevailing party for purposes of costs or for the purpose of seeking fees pursuant to 35 U.S.C. § 285 when a plaintiff voluntarily dismisses its case against the defendant with prejudice.  *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1307 (Fed. Cir. 2018); *Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006).  The Court granted AVS's motions to dismiss the cases with prejudice (DE 28), and AVS does not dispute in its response that Defendants are

14

deemed the prevailing parties.  Accordingly, Defendants are prevailing parties for purposes of 28 U.S.C. § 285.  *See Raniere*, 887 F.3d at 1307.

## 2.    Defendants have failed to establish that this is an "exceptional case"

According to Defendants, AVS's pursuit of this litigation arose to the "exceptional" level when it continued the litigation after Defendants filed the 1790 and 1794 IPRs in September 2016, and accordingly Defendants seek fees starting in September 2016.  Defendants claim that AVS's responses to the 1790 and 1794 IPRs were "exceptional," particularly in light of the pending institution of the Unified Patent IPR, because AVS should have known that the '093 patent was invalid.  And, as mentioned earlier, Defendants further contend that this Court's previous award of § 285 fees against a different company, Automotive Technologies International, Inc ("ATI"), supports the same finding against AVS here.

### a.  Request for fees incurred in the *inter partes* reviews

AVS contends that Defendants' "exceptional" allegations relate solely to AVS's conduct in the IPRs, and that the fees and costs relate only to the 1790 and 1794 IPRs, but that it is not aware of any court awarding § 285 attorney's fees based solely on conduct during an IPR proceeding.  (DE 43 at 24-27.)  Defendants counterpose that the Federal Circuit has repeatedly supported an award of attorneys' fees for proceedings before the PTO.  (DE 40 at 26-27.)

15

As one court recently explained:

> Inter partes review is a legal proceeding before the PTO's Patent Trial and Appeal Board (PTAB) whereby a petitioner seeks cancellation of some or all of the claims of a patent, either on novelty or non-obviousness grounds, based on prior art found in patents or printed publications. 35 U.S.C. § 311(b). Congress created IPR in 2011 to be a "*quick and cost effective alternative[] to litigation*."

*M-1 Drilling Fluids UK Ltd. v. Dynamic Air Inc.*, No. 14-cv-4857, 2018 WL 3104240, at *5 (D. Minn. Feb. 27, 2018) (emphasis added), *report and recommendation adopted in relevant part by* 2018 WL 1399308 (D. Minn. Mar. 20, 2018).  The *M-1* court further explained that "[c]ourts have awarded attorneys' fees under § 285 for legal services rendered in connection with proceedings before the PTO where doing so was reasonably necessary or related to the underlying patent lawsuit."  *See id.* (citing *PPG Indus., Inc. v. Celanese Polymer Specialties Co.*, 840 F.2d 1565, 1568-69 (Fed. Cir. 1988); *Chaffin v. Braden*, No. 6:14-0027, 2016 WL 5372540, at *2 (S.D. Tex. Sept. 26, 2016)).  Specifically, "[c]ourts typically awarded attorneys' fees associated with PTO proceedings either where there was a stay of the related district court case, such that the PTO proceedings effectively took the place of the federal court litigation," *citing, e.g., PPG Indus.*, 840 F.2d at 1569; *Deep Sky Software*, *Inc. v. Southwest Airlines Co.*, No. 10-cv-1234, 2015 WL 10844231, at *2 (S.D. Cal. Aug. 19, 2015), "or where the court determined the PTO's decision played a central role in determining the outcome of the federal court case," *citing, e.g., Howes v. Med. Components, Inc.*, 761 F.Supp.

16

1193, 1198 (E.D. Pa. 1990); *Scott Paper Co. v. Moore Bus. Forms, Inc.*, 604 F.Supp. 835, 838 (D. Del. 1984). *M-1 Drilling*, 2018 WL 3104240, at *6 & fn. 8, 9.

Here, as in *PPG Indus.* and *Deep Sky*, the Court ordered a stay of litigation pending the PTO proceedings, and thus the IPR proceedings "essentially substituted" for the court's work. *See PPG Indus.*, 840 F.2d at 1569 ("Celanese is entitled to reasonable attorney fees based upon the premise that the reissue proceedings substituted for the district court litigation."); *Deep Sky*, 2015 WL 10844231, at *2-3 (allowing defendant to recover fees for the reexamination proceedings before the PTO because those proceedings "essentially substituted for work that would otherwise have been done before this court"); *but see Chamberlain Group, Inc. v. Techtronic Indus. Co.*, 315 F.Supp.3d 977, 1019-20 (N.D. Cal. 2018) (not awarding fees for IPR proceedings where the Court did not instigate a stay of trial litigation and thus the IPR proceedings did not replace, but rather ran concurrently with the litigation), *aff'd in part, vacated in part and remanded in part on other grounds*, --- F.3d ---, 2019 WL 3938278 (6th Cir. Aug. 21, 2019). Thus, if Defendants could establish that these are "exceptional" cases, they would be allowed to seek fees attributable to the work before the PTO here.[5]

---

[5] AVS's reliance on *Webb v. Board of Educ. of Dyer Cty., Tenn.*, 471 U.S. 234 (1985) is misplaced. In *Webb*, the Supreme Court held that the plaintiff was not entitled to attorney fees for time spent by his counsel pursuing *optional*

### b. Substantive strength of AVS's litigating position in the IPR process

Defendants argue that the Unified Patent IPR was instituted in June 2016 and thus, by the time they *filed* their 1790 and 1794 IPRs in September 2016, AVS should have known that claims of the '093 patent were invalid over art cited in the Unified Patent IPR (which were also cited in the 1790 IPR) because the PTAB had determined that there was a "reasonable likelihood that [Unified Patent] would prevail with respect to the challenged claims." (DE 40 at 29-30.) Defendants also argue that AVS's response to the 1790 IPR was filed after the PTAB issued its Final Written Decision in the Unified Patent IPR, and thus further demonstrates AVS's unreasonable litigating position. (*Id.* at 30.) AVS responds that Defendants' argument is absurd, and would essentially mean that "the mere institution of an IPR must mean that a patent owner knows its patent is invalid and that its case is exceptional." (DE 43 at 27-28.) AVS also reminds the Court that the United Patent IPR invalidated only 10 of the 44 claims, which I likewise find to be significant.

---

administrative proceedings before the local school board because that five years of administrative work *prior to the lawsuit being filed* was wholly separate from, and thus did not "essentially substitute for," the court's work. *Id.* at 243-44 (noting that there was "no suggestion" that "any discrete portion of the work product from the administrative proceedings was work that was both useful *and of a type ordinarily necessary to advance the civil rights litigation* to the stage it reached") (emphasis added).

Under *Octane*, "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances" giving consideration to "the substantive strength of a party's litigating position" when determining if the case "stands out from others." *Octane*, 572 U.S. at 554. However, "[u]nless an argument or claim asserted in the course of litigation is so unreasonable that no reasonable litigant could believe it would succeed, it cannot be deemed objectively baseless for purposes of awarding attorney fees." *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 544 (Fed. Cir. 2011); *see also Net Talk.com*, 2015 WL 10015379, at *7 (finding that plaintiff's arguments were "weak and, possibly, meritless" but that this "[s]tanding alone … is insufficient to render this case extraordinary"). Under this standard, this case should not be found to be "exceptional."

First, each claim of an issued patent is presumed to be valid under 35 U.S.C. §282, and "[a] patent holder has the right to vigorously enforce its presumptively valid patent." *Homeland Housewares, LLC v. Sorensen Research & Dev. Trust*, 581 F. App'x 877, 881 (Fed. Cir. 2014) ("Once the PTO issued the '379 patent, it was presumed valid and K-C did not act unreasonably simply by bringing a patent infringement claim."). Thus, "[h]aving been issued a valid patent, [AVS] was entitled to a presumption of good faith in asserting its patent rights against [Defendants] in the form of a suit for infringement." *Stone Basket Innovations,*

19

*LLC v. Cook Med. LLC*, 892 F.3d 1175, 1180 (Fed. Cir. 2018) (citing *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017) (stating there is a "presumption that an assertion of infringement of a duly granted patent is made in good faith" (internal quotation marks and citation omitted)); *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1303 (Fed. Cir. 2004) (concluding, in an appeal from a denial of a fee award, that a party's decision to proceed with a lawsuit was not frivolous "in light of the statutory presumption of validity").

In addition, although the PTAB stated that there was a "reasonable likelihood" that certain claims of the '093 patent were invalid when it instituted the Unified Patent IPR in June 2016 (which is the legal standard for the institution or denial of every IPR, under 35 U.S.C. § 314[B] and not a finding unique to this case), the PTAB also stated that "[a]t this preliminary stage in the proceeding, we have not made a final determination with respect to the patentability of any challenged claim or the construction of any claim term."  (DE 40-5 at 34.)  Yet, despite that equivocal language, Defendants would have the Court impose a requirement that the *mere filing* of their IPRs challenging the same patent at issue in the Unified Patent IPR renders AVS's continued pursuit of its infringement action "exceptional."  This simply cannot be the standard.  *See MIT v. Micron Technology, Inc.*, 193 F.Supp.3d 56, 60 (D. Mass. 2016) ("[T]he PTAB's

preliminary conclusion that *defendants* advanced a reasonable *invalidity* argument

does not make [Plaintiff's] *validity* argument unreasonable.").

"[W]here a party has set forth some good faith argument in favor of its

position, it will generally not be found to have advanced 'exceptionally meritless'

claims." *Small v. Implant Direct Mfg. LLC*, No. 06 Civ. 683, 2014 WL 5463621,

at *3 (S.D.N.Y. Oct. 23, 2014) (citations omitted).  In responding to the IPRs, AVS

properly relied on the fact that the prior art addressed by the Unified Patent IPR

and the 1790 IPR, including Leising and Lau and other references, were considered

by the examiners during the eight-year prosecution of the '093 patent, who agreed

with AVS and issued the patent, further supporting AVS's good faith in pursuing

the litigation.  *See Stone Basket*, 892 F.3d at 1180 ("Cook's invalidity contentions,

based on prior art already considered by the Examiner and with no further

explanation, do not make the substantive strength of Stone's position

exceptional.").

Similarly, while the PTAB found in 2018 that priority to the December 1995

application was not proper, the PTO determined in 2015, after reviewing AVS's

detailed response to a requirement for information, in excess of 100 pages (DE 43-

12), that such priority *was* proper.  (DE 43-13.)  Defendants argue that AVS should

have known that Defendants' predecessor in interest "invented this stuff first[,]"

and therefore held the prior art, because it was covered by the "HAland patent"

21

from 2004 (Tr. at 9-12), but AVS clearly explains that its priority argument –
relating its claimed art back to 1995 and previously accepted by the Patent
Examiner, and which it expected to win again at the PTAB – made the prior art
issue essentially irrelevant to its litigation strategy.  (Tr. at 44.)  "We had prevailed
in another administrative proceeding on proving that the priority date is 1994 [sic]
which would have predated HAland." (*Id.*)

In light of this, AVS convincingly argues that in order for this Court to find
exceptionality here, it "would have to say that it's unreasonable for a lawyer and
client when they won in one proceeding to make the same argument in a second
proceeding" and "to find that when they won in one proceeding and lose in the
second proceeding, it's unreasonable for them to appeal." (Tr. at 45.)  *See
Vasudevan Software, Inc. v. Microstrategy, Inc.*, No. 11-cv-06637-RS, 2015 WL
4940635, at *5 (N.D. Cal. Aug. 19, 2015) ("That VSi advanced positions based on
a reading of the prosecution history ultimately found to be untenable does not
render its case wholly frivolous, or necessarily imply it acted in bad faith, such that
its conduct should be deemed 'exceptional.'")  As the Federal Circuit explained in
*Stone Basket*, "a strong or even correct litigating position is not the standard by
which we assess exceptionality," and "'[a] party's position on issues of law
ultimately need not be correct for them to not "stand[] out" or be found
reasonable.'"  *Stone Basket*, 892 F.3d at 1180 (citations omitted).

22

"[T]he case law makes clear that a party's arguments are not objectively unreasonable simply because they did not carry the day." *SFP Works, LLC v. Buffalo Armory, LLC*, No. 14-13575, 2017 WL 9474212, at *2 (E.D. Mich. Apr. 18, 2017) (collecting cases), *report and recommendation adopted by* 2017 WL 4051564 (E.D. Mich. Sept. 13, 2017). *Id.* at *3 (recognizing that *Octane Fitness* "still sets a very high bar and makes clear that attorneys' fees should only be awarded in rare or unusual cases"). Defendants have failed to demonstrate by a preponderance of the evidence that AVS's arguments in the IPR proceedings were "so unreasonable that no reasonable litigant could believe it would succeed," and thus AVS's arguments "cannot be deemed objectively baseless for purposes of awarding attorney fees." *See Old Reliable Wholesale*, 635 F.3d at 544.

### c. The manner of litigation

"'[T]he conduct of the parties is a relevant factor under *Octane's* totality-of-the-circumstances inquiry.'" *Stone Basket*, 892 F.3d at 1181 (quoting *Gay-mar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015) (footnote omitted)). Here, the litigation commenced in September 2015, Unified Patent filed its IPR in December 2015, the PTAB instituted the Unified IPR in June 2016, the litigation was stayed in August 2016, Defendants filed two IPR's challenging the validity of the '093 Patent in September 2016, and the PTAB instituted on those two IPRs in March 2017. The PTAB issued its Final Decision

on the Unified IPR in May 2017, which was appealed in July 2017, affirmed by the Federal Circuit in June 2018, and the request for rehearing *en banc* was denied in August 2018.  Two months later, without any further docketed litigation activity, the Court granted AVS's motion to voluntarily dismiss the litigation in October 2018.  There is no evidence of untoward conduct within the confines of this lawsuit.

Further, the PTAB, in its Final Written Decisions on the three IPRs, made no finding that AVS's position was "meritless," "frivolous," "baseless," etc., but only that it did not find AVS's arguments "persuasive."  (*See, e.g.*, DEs 40-9 at 25, 29; 40-10 at 20.)  While I recognize that Defendants *could* be "entitled to reasonable attorney fees based upon the premise" that the IPRs "substituted for the district court litigation," *PPG Indus.*, 840 F.2d at 1569, if AVS's posture in the PTAB were as egregious as Defendants now portray, it is nonetheless curious that: (1) the PTAB, which could have awarded attorney fees *sua sponte*, did not do so; and, (2) Defendants made no request for fees or for a finding of exceptionality in the PTAB (Tr. at 20-21), the very tribunal which was so deeply ensconced in the merits of the respective positions taken in the IPR proceedings and which has a particular expertise in evaluating the arguments made with respect to prior art, priority and presumably validity.  As Plaintiff persuasively stated at oral argument, with all of

24

the PTAB's experience with exceptional cases and its composition of specialized

administrative law judges:

> They heard all of the oral argument. They were in the best position to
> say that the argument was frivolous, that it was a weak, that it should
> never have been made. They didn't make any of those statements in any
> of their opinions[,] and what Autoliv wants to do is on the record that
> … is just not as thorough as what the PTAB had in front of it, ask you
> to put those words in their mouths, have you evaluate a collateral
> proceeding and take the step that the administrative law judges did not
> take; claim that the arguments were frivolous, that they had no merit,
> that they could not prevail[,] when in the proceeding itself, [the PTAB]
> didn't say that.

(Tr. at 48-49.)  While I recognize that 37 C.F.R. §§ 11.18(b)(2), 42.11(c) and

42.12, the regulations which allow the PTAB to issue sanctions where parties

advance "a misleading or frivolous argument or request for relief," are more akin

to Rule 11 sanctions, and that the Supreme Court made clear that conduct need not

be *sanctionable* to be *exceptional* under § 285,  *see Octane,* 572 U.S. at 555, the

Supreme Court also made clear that it is only "*the rare case* in which a party's

unreasonable conduct—while not necessarily independently sanctionable—is

nonetheless so 'exceptional' as to justify an award of fees."  *Id.* (emphasis added).

Defendants have failed to persuade me, in the absence of sanctionable conduct

either here or in the PTAB, that this is one of those "rare" cases.

Moreover, other than a generic assertion in Defendants' answers to an

entitlement to attorney's fees under § 285, at no time during this litigation or the

proceedings before the PTO did Defendants put AVS on clear notice that they

25

considered this case to be "exceptional" prior to their October 5, 2018 letter to

AVS.  (DE 40-16.)  A "party cannot simply hide under a rock, quietly documenting

all the ways it's been wronged, so that it can march out its 'parade of horribles'

after all is said and done.'"  *Stone Basket*, 892 F.3d at 1181 (internal quotation

marks and citation omitted).  Defendant waited until October 5, 2018, three years

after AVS filed this lawsuit and two years after Defendants filed their IPRs, before

informing AVS that they believed the litigation to be "objectively baseless" and

"bad faith litigation."  (DE 40-16.)  Within days, AVS offered to dismiss the case

with prejudice (*Id.* 40-14), and by the end of the month the dismissal order had

been entered.  (*Id.* 28.)  Furthermore, as one court noted, "[i]t is also important that

no Rule 11 Motion was ever filed in this case.  Here, [the defendant] insists that

this case was objectionably frivolous from its inception and should never been

filed.  Well, Rule 11 is the remedy for that."  *Net Talk.com*, 2015 WL 10015379, at

7-8 (quoting *Commonwealth Labs., Inc. v. Quintron Instrument Co.*, No. 1:14-cv-

20083-PAS, ECF No. 98 (S.D. Fla. July 20, 2015)).  No Rule 11 motion was filed

here, and Defendants have failed to demonstrate any unusual tactics of counsel or

litigation misconduct on the part of AVS.  *See H-W Technology*, 2014 WL 437-

8750, at *7.

### d.  The *ATI* litigation is irrelevant

Defendants also argue that a finding of exceptionality in this case is supported by a finding of exceptionality and an award of fees in a different case involving different parties and different patents.  (DE 40 at 33-35, referring to *Automotive Technologies International, Inc. v. Siemens VDO Automotive Corp.*, 744 F.Supp.2d 646 (E.D. Mich. 2010).)  The *Stone Basket* court recognized that "[i]n considering the 'totality of the circumstances' in a § 285 motion, a party's similar conduct in other litigation is also relevant."  *Stone Basket*, 892 F.3d at 1183 (citing *Octane Fitness*, 134 S. Ct. at 1757).

In the other case cited by Defendants, Automotive Technologies International, Inc. ("ATI") filed an infringement action of four patents, which were subsequently declared invalid.  *See Automotive Technologies*, 744 F.Supp.2d at 648-49.  However, neither AVS nor the '093 patent were involved in that litigation, and the finding of exceptionality and award of fees were based on ATI's *litigation misconduct* before the court.  The Court found that ATI improperly relied on a patent that it knew was non-enabled *for four years prior to summary judgment*, and that ATI deliberately engaged in a delay tactic by attempting to "save the '038 Patent by applying for a reissue of the patent … after [Defendants] filed their motion for summary judgment."  *Id.* at 653-54.  Further, ATI stated that it would drop the fourth patent at issue in its complaint, but then proceeded to

27

summary judgment where it failed to even respond to the defendants' motion." *Id.* at 649, 654.

Conversely, there are no similar allegations of litigation misconduct by AVS in this case. Rather, AVS relied on a presumptively valid patent and arguments successful during the prosecution of the patent application before the PTO in opposing Defendants' IPRs. Once it exhausted its appeals regarding the Unified Patent IPR – and without even awaiting the final outcomes of its appeals of the additional IPRs pursued by these defendants – AVS voluntarily dismissed these cases. Accordingly, the *ATI* litigation, involving a different entity, different patents and a very distinguishable litigation history, is irrelevant to the exceptionality analysis here. *See Majestic Mirrors & Frame, LLC v. Electric Mirror, LLC*, No. 07-21300, 2017 WL 8792557, at *6 (S.D. Fla. Oct. 10, 2017) (finding that plaintiff's reference to patent litigation involving other patents not at issue in the instant litigation "is not relevant to the issue of whether Defendant willfully and intentionally withheld material prior art with the intent to deceive the USPTO **in this case**.") (emphasis in original).

### E.   Conclusion

Viewing all of the facts and circumstances surrounding this litigation, the Autoliv Defendants have not shown that AVS intentionally presented a frivolous claim or acted with bad faith. *See Octane Fitness*, 572 U.S. at 554. The case was

hard fought on both sides before the PTAB, and attorney's fees are not warranted under § 285 where one side simply advances a losing argument, or even several losing arguments. This would appear to be particularly so where at least one of its ultimately unsuccessful arguments, namely priority, had previously been extensively and successfully advanced before the examiner at the patent prosecution stage.[6] AVS's belief, that having prevailed on its priority argument before one government specialist in patent law was a good omen for its chances of prevailing in subsequent challenges, was a reasonable one. Additionally, AVS's strategy of putting all of its eggs in the basket of prevailing on priority (dating back to 1995) in order to overcome a prior art challenge (dating back to 2004) neither makes this case "stand[] out from others" nor lends itself to a characterization of having been litigated in an "unreasonable manner[.]" *Octane Fitness,* 572 U.S. at 554. In this case, AVS should not have had to "Give up the Ghost" merely because one or more IPRs were filed, or even because they were actually instituted by the PTAB. *Octane Fitness* still sets a very high bar and makes clear that attorneys' fees should only be awarded in rare or unusual cases. I conclude that this litigation is far more typical than exceptional, and that an award of attorney's

---

[6] As I noted at oral argument, the Patent Examiner was "not some neophyte in the world of patent law[.]" (Tr. at 54.) Defendants' suggestion that AVS simply got around the Patent Examiner by "pulling the wool over [his or her] eyes" is rejected. (*Id*. at 53-54.)

fees is not warranted.  Accordingly, Defendants' motion for attorney fees/costs should be denied.

Finally, since the Mobis Defendants stated at the hearing that they are withdrawing their motion, their motion for fees should accordingly be denied as moot.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 30, 2019          s/*Anthony P. Patti*
                                Anthony P. Patti
                                UNITED STATES MAGISTRATE JUDGE